## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KIRBY, individually and on behalf of other similarly situated persons, | ) ) ) ) | Case No. 7:19-CV-170 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CAUDILL VENTURES, LLC, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S CONSENT MOTION FOR FINAL APPROVAL OF A CLASS AND COLLECTIVE ACTION SETTLEMENT, AND MEMORANDUM IN SUPPORT

Plaintiff Christopher Kirby, on behalf of himself and all others similarly situated, through his attorneys, with the consent of Defendant Caudill Ventures, LLC d/b/a "Papa John's," through its attorneys, moves the Court for final approval of a Fair Labor Standards Act ("FLSA") collective action and a North Carolina class action settlement.

A copy of the parties' agreed-upon Settlement and Release Agreement ("Settlement Agreement") is attached as "Exhibit 1." The declarations of Plaintiff's attorneys Mark Potashnick and Eli Karsh in support of this motion and brief are attached as "Exhibit 2" and "Exhibit 3," respectively. Plaintiff incorporates the following Memorandum in Support. The parties have reached a settlement on behalf of all class members. The settlement meets the standards for approval of an FLSA settlement and final approval of a class action settlement.

### Facts and Procedural History

Defendant owns and operates three Papa John's pizza stores in North Carolina.

Plaintiff has worked for Defendant as a pizza delivery driver and manager / delivery driver since about August 2017 at its store in Shallotte, NC.

On September 4, 2019, Plaintiff filed suit against Defendant alleging minimum wage violations resulting from under-reimbursed vehicle costs incurred on the job in violation of the FLSA and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.6, *et seq*. The FLSA claim was asserted as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The NCWHA claims were asserted as a class action under Fed. R. Civ. P. 23.

Plaintiff alleged that Defendant under-reimbursed its delivery drivers' vehicle costs incurred on the job, thereby reducing the workers' net wages below the federal minimum wage rate (nominal wages – unreimbursed vehicle costs = subminimum net wages). Plaintiff further alleged that those under-reimbursements resulted in unpaid earned wages and unauthorized deductions in violation of North Carolina law. Further, Plaintiff alleged that Defendant applied substantially the same reimbursement formula and rate to all of its delivery drivers during the recovery period.

Counsel for the parties discussed disclosure of data needed to evaluate liability and damages, followed by mediation. Defendant produced that data, which Plaintiff's counsel vetted, thoroughly reviewed, and analyzed thorough detailed spreadsheet calculations. Based on those calculations, the parties mediated for a full day on March 3, 2020 in Orlando, Florida with a highly experienced wage and hour and class action mediator, Kay Wolf. Through a full day of mediation, entailing numerous successive demands and offers, the parties reached a settlement.

Named Plaintiff Christopher Kirby actively participated in each round of the mediation.

The attorneys who negotiated on behalf of the parties are experienced litigators, and they vigorously represented their clients' respective interests. Ex. 2, Declaration of Mark Potashnick, at ¶¶ 1-8 (hereinafter "Potashnick Decl."); Ex. 3, Declaration of Eli Karsh (hereinafter "Karsh Decl."), at ¶¶ 8-12.

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Potashnick Decl. ¶ 10; Karsh Decl., ¶ 5. It also considers Defendant's size and financial capacity. *Id.*

On April 28, 2020, the Court certified the FLSA collective action for settlement purposes, preliminarily certified the North Carolina class action for settlement purposes, preliminarily approved the parties' settlement, approved the form and content of the parties notice of settlement to class members, ordered dissemination of that notice, and scheduled a final fairness hearing for August 28, 2020 at 1:00 p.m. eastern time. ECF Doc. # 17.

Since the Court issued that Order, Plaintiffs' counsel has disseminated the Court-approved notice of the settlement via first-class mail. Plaintiffs' counsel attempted to locate updated addresses for each returned notice. After the full 60-day notice period, no class member has objected or opted-out of the settlement.

## Key Settlement Terms

The parties have executed a Settlement Agreement (Ex. 1). In sum, they agreed to settle all putative class members' wage and hour claims by Defendant establishing a settlement fund of $140,000.00 inclusive of attorneys' fees, costs and a service award, plus Defendant's payment of the entire mediation fee. All class members will receive at least $50.00. The remaining settlement funds will be distributed to class members on the following equitable formula:

1. For each Settlement Class Member, the total number of his or her deliveries for Defendant during the Release Period shall be his/her "Individual Deliveries"

and the aggregate of all Individual Deliveries among all Settlement Class Members shall be the "Class Deliveries."

2. Each Class Member's Individual Deliveries shall be divided by the Class Deliveries to obtain his/her "Payment Ratio."

3. Each Class Member's Payment Ratio shall be multiplied by the Net Settlement Amount (gross settlement amount (not including mediation fee reimbursement) – fees and costs – service award – administration costs = Net Settlement Amount) to arrive at his or her Individual Settlement Payment.

4. Each Settlement Class Member's Individual Settlement Payment will be at least $50.00.

*See* Settlement Agreement, ¶ 2.1(B).

The release binding Class Members who do not opt out is limited to wage and hour claims:

Each Class member who cashes his or her check shall release all claims that were made against Defendant in this Litigation, or that reasonably could have arisen out of the same facts alleged in this Litigation, including but not limited to any and all claims under the FLSA; any and all claims arising out of any state wage, minimum wage or overtime laws; any and all claims for breach of contract; any and all claims for unpaid or underpaid employee expense reimbursement; any and all claims for unjust enrichment; and any and all derivative claims relating to unpaid wages, minimum wage and overtime compensation against Defendant. Plaintiff's Counsel will include in the envelope containing the check to each Class member the language of this release provision along with an explanation that by cashing the check, each Class member will thereby be bound by the terms of this Agreement.

*See* Settlement Agreement, ¶ 3.1(A).

Based on his service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, named Plaintiff Kirby seeks a modest service award of $3,000.00. *See id.,* ¶ 2.1(C).

Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs equal to one-third (1/3) of the gross settlement amount (not including mediation fee reimbursement). Defendant does not oppose or object to this request for attorneys' fees and costs. *See id.*, ¶ 2.1(D).

## Argument

### I. Class / Collective Action Certification

When parties reach a settlement agreement prior to class certification, courts must ratify both the propriety of certification and the fairness of the settlement. *Hall v. Higher One Machs., Inc.,* 2016 U.S. Dist. LEXIS 131009, *5 (E.D.N.C. Sept. 26, 2016) (citing *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 621 (1997)).

To obtain class certification, the proponent of class certification must show the elements required under Fed. R. Civ. P. 23. Subsection (a) of Rule 23(a) requires:

> "(1) the members of the class are so numerous that separate joinder of each member is impracticable ["*numerosity*'];
>
> (2) there are questions of law or fact common to the class ["*commonality*"];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["*typicality*"]; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ["*adequacy of representation*"].

In addition to Rule 23(a), the party seeking class certification must satisfy one of the alternative requirements of Rule 23(b). In this case, the pertinent requirement is found in subsection (b)(3), which provides that "…the questions of law or fact common to class members predominate over any questions affecting only individual members ["*predominance*"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["*superiority*"]." *Id.*

### Rule 23(a)(1): Numerosity

Plaintiff's claims satisfy the "numerosity" requirement of Rule 23(a)(1), as the class consists of approximately 182 current and former delivery drivers. Thus, the class is so numerous that separate joinder of each member is impracticable. *Grabarczyk v. Stein,* 2019 U.S. Dist. LEXIS 159365, *3 (E.D.N.Y. Sept. 19, 2019) (recognizing that "in certain instances numerosity may be presumed at forty members"); *see also, e.g., Hutson v. CAH Acq. Co. 10, LLC,* 2016 U.S. Dist. LEXIS 107329, *5-6 (M.D.N.C. Aug. 15, 2016) ("'A class of 41 or more is usually sufficiently numerous.'") (quoting 5 Moore's Federal Practice ¶ 23.22 (Matthew Bender 3d Ed.)); *Ganesh, L.L.C. v. Computer Learning Ctrs., Inc.,* 183 F.R.D. 487, 489 (E.D. Va. 1998) ("As few as forty [class members] can suffice in an appropriate case").

### Rule 23(a)(2): Commonality

The "commonality" test requires at least one question of law or fact common to each class member. *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (2011)) ("even a single common question will do."); *Grabarczyk,* 2018 U.S. Dist. LEXIS 117303, at *3-4 (same). "It is not necessary … that all of the questions of law or fact in a case be common to all putative class members, but only that 'a single common question . . . exist.'" *Mondragon v. Scott Farms, Inc.,* 2019 U.S. Dist. LEXIS 199202, *9-10 (E.D.N.C. Nov. 18, 2019) (quoting *Rodger v. Electronic Data Sys. Corp.,* 160 F.R.D. 532, 537 (E.D.N.C. 1995)). "Indeed, a single common question is sufficient to satisfy the rule." *Id.* (citing *Haywood v. Barnes,* 109 F.R.D. 568, 577 (E.D.N.C. 1986)). The commonality test has been characterized as "not onerous" and as a "'low hurdle' that is 'easily surmounted[.]'" *Chado v. Nat'l. Auto Inspections, LLC,* 2018 U.S. Dist. LEXIS 117303, *15 (D. Md. Jul. 13, 2018); *Reed v. Big Water Resort, LLC,* 2016 U.S. Dist. LEXIS 187745, *9

(D.S.C. May 26, 2016) (quoting *In re Prudential Sec. Inc. Ltd. P'ships. Litig.,* 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995)).

For settlement purposes, Plaintiff's claims satisfy the "commonality" requirement because all class members held the same job, performed the same primary job duty of delivering pizzas and other food to Defendant's customers using their personal vehicles, were compensated by similar hourly pay rates, drove similar delivery distances, Defendant reimbursed all of them with a comparable mileage rate and/or flat rate per delivery, Defendant did not track their actual vehicle cost, and their claims are based on the same legal theory. Plaintiff maintains that a common legal theory holds that employees may recover vehicle costs when the employer's estimation of such costs is unreasonable, and the shortfall results in unpaid wages. *See, e.g., Perrin v. Papa John's Int'l., Inc. ("Perrin I"),* 2013 U.S. Dist. LEXIS 181749, *20-24 (E.D. Mo. Dec. 31, 2013) (explaining development of applicable law and citing cases). Alternatively, a different common legal theory may apply to all claims, specifically that Defendant must either (1) reimburse actual vehicle costs or (2) reimburse at the IRS standard business mileage reimbursement rate ("IRS rate"). *Hatmaker v. PJ Ohio,* 2019 U.S. Dist. LEXIS 191790, *5-22 (S.D. Ohio Nov. 5, 2019); *Zellagui v. MCD Pizza, Inc.,* 59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 13, 2014). Whichever legal theory this Court choses, the same legal theory will apply to all delivery drivers' claims.

Recently, *Benton v. Deli Mgmt., Inc. d/b/a "Jason's Deli,"* refused to decertify a class asserting the exact same claim because "[t]he existence of so many" commonalities among the class, "including job descriptions, duties, and pay provisions (e.g., they were all paid hourly), as well as the ***central question*** of the reasonableness of Jason's Deli's current reimbursement." 2019 U.S. Dist. LEXIS 135522, *45-46 (N.D. Ga. Aug. 8, 2019) (emphasis added). Thus, *Benton* not only

recognized that the reasonableness of an employer's reimbursements is a common question, but also recognized that it is the "central question" determinative of every class member's claim. *Id.*

In fact, the answer to either one of two applicable common questions will drive resolution of all claims asserted: (1) what is a reasonable vehicle reimbursement rate for the class or (2) did Defendant either track and reimburse actual vehicle costs or reimburse at the IRS rate. *See, e.g., Hatmaker*, 2019 U.S. Dist. LEXIS 191790, at *21 ("the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service"); *Perrin v. Papa John's Int'l., Inc. ("Perrin II"),* 2014 U.S. Dist. LEXIS 133974, *12 (E.D. Mo. Sept. 24, 2014) (recognizing that class-wide vehicle reimbursement claim can be proven through class-wide expert vehicle costing testimony); *Villalpando v. Exel Direct Inc.,* 2016 Dist. LEXIS 53773, *45 (N.D. Cal. Apr. 21, 2016) (finding that vehicle cost reimbursement claims can be proven through expert testimony regarding the applicable class-wide vehicle cost reimbursement rate); *Zellagui,* 59 F.Supp.3d at 716 (employer must reimburse actual vehicle costs or reimburse at the IRS rate). These common ultimate questions clearly support a finding of commonality.

Defendant does not agree with Plaintiff's assessment but does not oppose class certification *for settlement purposes only.*

### Rule 23(a)(3): Typicality

"Typicality requires a showing that the 'representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Grabarczyk,* 2019 U.S. Dist. LEXIS 159365, at *4 (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996)). Here, the claims of the named Plaintiff and the class arise out of the same course of conduct, specifically Defendant's company-wide

vehicle reimbursement program. Moreover, all such claims are based on the same legal theory: unpaid wages resulting from under-reimbursed vehicle costs. Thus, while Defendant disagrees with Plaintiff's assessment, the typicality requirement is fulfilled *for settlement purposes only*.

### Rule 23(a)(4): Adequacy of Representation

"Adequacy of representation requires that the class representative plaintiff not have interests which are materially adverse to the class." *Grabarczyk,* 2019 U.S. Dist. LEXIS 159365, at *6 (citing *Amchem Prods.,* 521 U.S. at 625); *Sharp Farms v. Speaks,* 917 F.3d 276, 295 (4th Cir. 2019) (class representatives must fairly and adequately protect interests of class). "The putative class representatives must also 'have a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Id.* (quoting *Shiring v. Tier Techs., Inc.,* 244 F.R.D. 307, 315 (E.D. Va. 2007)). "The adequacy of representation factor further provides a basis upon which to consider the adequacy of proposed class counsel." *Id.* (citing *Shiring*, 244 F.R.D. at 316 n.20; Fed. R. Civ. P. 23(g)). Plaintiff's claims satisfy the "adequacy" requirement of Rule 23(a)(4) because his attorneys are veteran class action counsel, particularly in claims alleging under-reimbursement of automobile expenses in the pizza delivery industry, because Plaintiff maintains a substantial interest in success of the claims, and because Plaintiff's interests are not antagonistic to the class members. Indeed, Plaintiff Kirby sought to champion the class members' rights by seeking out counsel, providing counsel with information about the claims, filing class and collective claims and advocating for the interest of all Defendant's delivery drivers throughout the mediation.

### Rule 23(b)(3): Predominance and Superiority

In addition, Plaintiff contends that his claims satisfy Rule 23(b)(3), in that questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual

members of the class. Again, the predominant question for *every* class member may be the reasonableness of Defendant's class-wide vehicle reimbursement rate. *See, e.g., Benton,* 2019 U.S. Dist. LEXIS 135522, at *45-46; *Perrin II,* 2014 U.S. Dist. LEXIS 133974, at *12; *Villalpando,* 2016 U.S. Dist. LEXIS 53773, at *45. As explained above, *Benton* recently recognized that the "central" and predominant question dispositive of all class members claims is the reasonableness of an employer's vehicle reimbursements, and that question easily eclipses any differences between class members than an employer can identify. *Id.*, 2019 U.S. Dist. LEXIS 135522, at *45-46.

Another common legal standard which may be applied is whether Defendant either tracked and reimbursed actual vehicle costs or reimbursed at the IRS rate. *Hatmaker,* 2019 U.S. Dist. LEXIS 191790, at *5-22; *Zellagui,* 59 F.Supp.3d at 716. Either way, the same legal standard will be applied class wide, and the answer to that question will predominate.

Finally, Plaintiff contends that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. There is no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt-out of the parties' settlement. Counsel for the parties are unaware of any other pending litigation against Defendant entailing the same claim. For purposes of settlement, the class is manageable, it can easily be identified from Defendant's own records, a class action will foster judicial economy by avoiding duplicative litigation, and a class action will ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented. These same considerations have warranted class certification in the similar claims by pizza delivery drivers. *See, e.g., Perrin I,* 2013 U.S. Dist. LEXIS 181749, at *25-26; *Bass v. PJCOMN, Inc.,* 2011 U.S. Dist. LEXIS 58352, *10-11 (D. Colo. Jun. 1, 2011).

Defendant does not agree with Plaintiff's assessment but do not oppose class certification *for settlement purposes only.*

## II.    Approval of the Settlement

"Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, the courts generally have followed a two-step procedure." *Scott v. Family Dollar Stores, Inc.,* 2018 U.S. Dist. LEXIS 41908, *10 (W.D.N.C. Mar. 14, 2018) (citing *Airline Pilots Ass'n. v. Velez,* 2016 U.S. Dist. LEXIS 120714, *15-16 (W.D.N.C. Sept. 7, 2016)). "First, the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Id.* "Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a 'fairness' hearing at which all interested parties are afforded an opportunity to be heard on the proposed settlement." *Id.*, 2018 U.S. Dist. LEXIS 41908, at *10-11. "The ultimate purpose of the fairness hearing is to determine if the proposed settlement is 'fair, reasonable, and adequate.'" *Id.*, at *11. This litigation has now reached the final approval stage.

To determine whether a proposed class action settlement agreement is fair and reasonable, a "court considers: (1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel whether expressed directly or through failure to object; and (6) the probability of the plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery, together with the injunctive relief designed to assure future FLSA compliance by defendant." *Pizzella v. Apex Pipeline Servs.,* 2019 U.S. Dist. LEXIS 194516, *9 (S.D. W. Va. Nov. 8, 2019) (citing *Harper v. ELK Run Coal Co., Inc.,* 2012

11

U.S. Dist. LEXIS 76876, *8-9 (S.D. W. Va. Jun. 4, 2012)). District Courts within this Circuit typically consider the same factors in determining approval of FLSA collective action settlements, plus the existence of a *bona fide* dispute between the parties. *Id.; see also Hackett v. ADF Rest. Invs.,* 259 F.Supp.3d 360, 365-67 (D. Md. 2016) (applying same factors, plus determining existence of *bona fide* dispute, in approving settlement in similar claim against pizza delivery company based on alleged minimum wage violations resulting from under-reimbursed vehicle costs). Here, all those factors favor approval of both the class and collective action settlements.

"Courts greatly favor the settlements of cases and allowing litigants to achieve their own resolution of disputes." *Faile v. Lancaster Cnty.,* 2012 U.S. Dist. LEXIS 189610, *12 (D.S.C. Mar. 8, 2012) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.,* 2009 U.S. Dist. LEXIS 89129, *27 (E.D. Va. Jun. 23, 2009)). "'Although the district court has broad discretion in approving a settlement of a class action case, there is a 'strong presumption in favor of finding a settlement fair.'" *Id.* A "settlement [fairness] hearing is not a trial, and [the] court's role is more a 'balancing of likelihoods rather than an actual determination of the facts and law[.]'" *Id.* (edits in original, quoting *Lomascolo,* 2009 U.S. Dist. LEXIS 89129, at *28). The court "'is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing … and absent fraud, collusion or the like, [the] court should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Lomascolo*, 2009 U.S. Dist. LEXIS 89129, at *28-29).

### Factors 1 & 2: Extent of Discovery Completed and the Stage of the Proceedings

Although this claim settled early, the parties were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate damages. That data was disclosed, then utilized to evaluate both liability and various damage scenarios. The parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to

settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

### Factor 3: Absence of Fraud or Collusion

The parties engaged in a day-long mediation with an experienced wage and hour and class action mediator, Kay Wolf, in Orlando, Florida. The settlement was achieved only as the result of multiple rounds of back-and-forth negotiations. Thus, no fraud or collusion occurred. *See, e.g., Hutton v. Nat'l Bd. of Exam'rs. in Optometry, Inc.,* 2019 U.S. Dist. LEXIS 120558, at *17-18 (D. Md. Jul. 15, 2019) (recognizing that reliance on an experienced mediator and multiple rounds of negotiations are *indicia* of a settlement negotiated at arm's length.").

### Factors 4 & 5: Experience and Opinions of Counsel

Based on their ample experience litigating similar claims across the nation (detailed below), class counsel has recommended this settlement without hesitation as in the best interests of the class members. Therefore, this factor weighs strongly in favor of approval. *See Finn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement.").

### Factor 6: The Probability of the Plaintiff's Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

Plaintiff's claim is supported by substantial evidence, but ultimately that claim may depend upon persuading a jury to adopt his evidence over Defendant's competing evidence and arguments. As courts recognize, the claims may depend on competing expert vehicle costing testimony. *Perrin II,* 2014 U.S. Dist. LEXIS 133974, at *12 (recognizing battle of vehicle costing experts); *Villalpando,* 2016 Dist. LEXIS 53773, at *45. Also, Plaintiff's claim may depend on what test the Court decides to apply. *Compare, e.g., Perrin II,* 2014 U.S. Dist. LEXIS 133974, at *12 (battle of

experts over reasonableness of employer's vehicle reimbursement rate) *with Hatmaker* (employer must either reimburse actual vehicle costs or reimburse at the IRS rate). Courts recognize that "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured." *In re Bear Stearns Cos., Inc. Sec. Litig.*, 909 F. Supp. 2d 259, 266-7 (S.D.N.Y. 2012) (holding that such disputes "weigh in favor of approval."). Indeed, "it is virtually impossible to predict with certainty which testimony would be credited…". *In re Warner Comm'ns. Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986).

Predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims. Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation. In sum, the uncertainty of a jury trial warrants settlement approval.

Plaintiff further recognizes some risk of denial of class certification. *See Sullivan v. PJ United, Inc.,* 2018 U.S. Dist. LEXIS 143236 (N.D. Ala. Jun. 22, 2018). Plaintiff's counsel weighed that risk in negotiating the settlement amount.

The settlement provides each class member with the chance to obtain meaningful relief. The average recovery, after the service award, fees, litigation costs and administrative costs is projected to be $479.85 ($87,333.33 net settlement fund / approximately 182 class members = $479.85 average recovery per Plaintiff). Thus, the settlement provides the delivery drivers meaningful relief now, rather than the mere possibility of recovery at some unknown time in the future. Moreover, this is a classic compromise as the recovery equates to more than the Defendant's calculation of damages, but less than Plaintiff's calculation.

From a different perspective, based on a reasonable vehicle reimbursement rate of $.45 per

mile, Plaintiff has recovered more than 50% of class-wide actual damages ($140,000.00 recovery / $269,166.24 total class-wide actual damages based on $.45 per mile = 52%). Such recovery falls well within the range of comparable settlement approved around the nation in similar claims. *See, e.g., Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (recognizing reasonable ranges of settlement of FLSA claims between 26% and 60%); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to constitute a "tangible monetary benefit" for the class members); *Knight v. Red Door Salons, Inc.,* 2009 U.S. Dist. LEXIS 11149, *9-10 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

### Additional Factor for FLSA Collective Action:  Existence of *Bona Fide* Dispute

To effect a binding release, a settlement of FLSA claims requires judicial or U.S. Department of Labor approval of FLSA settlements. *Johnson v. Helion Techs., Inc.,* 2019 U.S. Dist. LEXIS 173599, at *3 (D. Md. Oct. 7, 2019) (quoting *Banegas v. Gen. Lawn Serv. Corp.,* 2014 U.S. Dist. LEXIS 98009, *1 (D. Md. Jul. 17, 2014) (quoting *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

"An FLSA settlement generally should be approved if it reflects 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Johnson,* 2019 U.S. Dist. LEXIS 173599, at *4 (quoting *Lynn's Food Stores,* 679 F.2d at 1355). The Court should readily conclude that the parties' settlement here constitutes a fair and reasonable resolution of a *bona fide* dispute. "'[A]pproval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements.'" *Hall v. High One Machs., Inc.,* 2016 U.S. Dist. LEXIS

131009, *11 (E.D.N.C. Sept. 26, 2016) (quoting *DeWitt v. Darlington Cnty.,* 2013 U.S. Dist. LEXIS 172624, *10-11 (D.S.C. Dec. 6, 2013)).[1]

A settlement addresses a *bona fide* dispute when "there are FLSA issues actually in dispute." *Portillo v. Intipuqueno Rest.,* 2019 U.S. Dist. LEXIS 32552, *3-4 (D. Md. Feb. 28, 2019) (citing *Saman v. LBDP, Inc.,* 2013 U.S. Dist. LEXIS 83414, *7 (D. Md. Jun. 13, 2013) (citing *Lynn's Food Stores*, 679 F.2d at 1355). Here, Plaintiff alleged that under-reimbursed automobile expenses caused minimum wage violations. Defendant denies Plaintiff's substantive allegations, asserts that Plaintiff was reasonably reimbursed for vehicle costs, and contends that Plaintiff was compensated at or above the applicable minimum wage. Thus, the claims were actually in dispute.

Defendant produced, and the parties analyzed, detailed data specific to Plaintiff's allegations of liability and damages. If a jury agreed with Plaintiff's allegations about a reasonable reimbursement rate, Defendant could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiff's attorneys' fees and costs. On the other hand, if a jury agreed with Defendant about a reasonable reimbursement rate, Plaintiff would obtain no recovery whatsoever. These facts clearly demonstrate the existence of a *bona fide* dispute.

The settlement is fair and reasonable for the same reasons explained above.

### III.     Attorney's Fees and Costs Provided in the Settlement are Appropriate

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the Settlement Amount. Ex. 1, ¶ 3.2(A). The FLSA and NCWHA both contain fee and cost shifting

---

[1] Some courts hold that "[b]ecause 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* [approval] factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Op. Corp.,* 2017 U.S. Dist. LEXIS 216246, *14-15 & 20 (E.D.N.Y. Aug. 7, 2017) (quoting and citing cases).

provisions. 29 U.S.C. § 216(b); N.C. Gen. Stat. § 95-25-22(d). The Fourth Circuit recognizes that the purpose of fee shifting is to "'enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Brandon v. Guilford Cty. Bd. of Elec.*, 921 F.3d 194, 199-200 (4th Cir. 2019) (quoting *Kay v. Ehrler,* 499 U.S. 432, 436 (1991)). Simply stated, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Burnley v. Short,* 730 F.2d 136, 141 (4th Cir. 1984) (citing 29 U.S.C. § 216(b)). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The settlement agreement here authorizes an award of fees *and costs* equal to of one-third (1/3) of the total settlement amount. Courts in this Circuit have approved the same percentage in the same claim against another pizza delivery company. *See, e.g.*, *Hackett,* 259 F.Supp.3d at 368-69 (approving one-third attorney's fees in similar claim against pizza delivery company alleging minimum wage violations resulting from under-reimbursed vehicle costs); *DeWitt,* 2013 U.S. Dist. LEXIS 172624, *21-27 (approving one-third attorney's fees); *Faile,* 2012 U.S. Dist. LEXIS 189610, *24-25 (same); *Smith v. Krispy Kreme Doughnut Corp.,* 2007 U.S. Dist. LEXIS 2392, *6

17

(M.D.N.C. Jan. 10, 2017) (recognizing that "[i]n this jurisdiction, contingent fees of one-third

(33.3%) are common.").

Here, the named Plaintiff agreed to pay 35% of any collective action settlement as a fee, given

the relatively small size of the case. However, Plaintiff's Counsel voluntarily agreed to reduce

that fee to one-third (1/3) as part of the settlement, again *including litigation costs*.

To ensure a fee award is reasonable, this Circuit considers "the *Johnson* factors:"

> (1) the time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4) the
> attorney's opportunity costs in pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the outset of the litigation; (7) the
> time limitations imposed by the client or circumstances; (8) the amount in
> controversy and the results obtained; (9) the experience, reputation and ability of
> the attorney; (10) the undesirability of the case within the legal community in which
> the suit arose; (11) the nature and length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards in similar cases.

*Randolph v. Powercomm Constr., Inc.,* 715 Fed. Appx. 227, 230 & n.2 (4th Cir. 2017) (citing

*Johnson v. Ga. Hwy. Express Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)).

> ***Johnson* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions
> Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and
> "Undesirability" of the Case.**

Minimum wage lawsuits based on under-reimbursed expenses were extremely rare before

Plaintiff's counsel's efforts on behalf of pizza delivery drivers. Previous cases prosecuted by

Plaintiff's counsel provided significant and novel challenges, and ultimately yielded favorable

decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688

F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly

addresses the application of the 'reasonable approximation' standard to reimbursement of expenses

for purposes of a minimum wage claim" and "[t]he present case does not involve a straightforward

claim under the FLSA for unpaid amounts")). *See, e.g., Wass v. NPC Int'l,* Inc., 688 F.Supp.2d

1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim."; "The present case does not involve a straightforward claim under the FLSA for unpaid amounts; rather, … [t]his case… demands a greater degree of specificity in pleading" than other FLSA cases.)).

Under the defendants' threats of seeking sanctions in both the *NPC case* and *Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) if their theory proved incorrect, Plaintiff's Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *See id*. These rulings paved the way for conditional certification of the FLSA claims here, and ultimately this settlement.

The District of Maryland recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.

> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

*Hackett*, 259 F. Supp. 3d at 368; *see also, e.g., Jimenez v. Pizzerias*, LLC, 2017 U.S. Dist. LEXIS 129820, *13-14 (S.D. Fla. Aug. 14) ("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

The fact that rulings from other courts, obtained by Plaintiff's Counsel, may have helped them obtain early resolution of this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh Circuit

in rejecting a similar argument, while these prior decisions bolstered Plaintiff's position, no court of appeals has addressed these issues. Similarly, none of the other pizza delivery driver cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Trial may be expert-intensive and thus costly. Plaintiff would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for all Plaintiffs. Further, regardless of the outcome at trial, post-judgment appeals would be likely.

Additionally, Plaintiff's counsel possess extensive experience in all types of wage and hour litigation. Potashnick Decl., ¶¶ 1-7; Karsh Decl., ¶¶ 8-12. In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Johnson* factors (2), (3), (9) and (10) all strongly support Plaintiff's counsels' requested fee.

### *Johnson* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 577 (E.D. Va. 2016) (following *Hensley*). This Court has particularly noted that "[c]hallenging compensation for pizza delivery drivers under the FLSA is not a cut and dried affair." *Hackett*, 259 F. Supp. 3d at 369. This Court found that under the *Johnson* factors it is particularly appropriate to award Plaintiffs' counsel lodestar rates because due to the uncertain nature of challenging compensation for delivery drivers under the FLSA, "it is quite likely that, but for this  lawsuit, [Defendants'] drivers in Defendants' stores would not have known that they had a viable cause of action and thus, in the end, received more compensation than they anticipated." *Id.*

As noted above, given the novelty and difficulty of cases involving minimum wage laws vis-à-vis reimbursable expenses, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the parties following contentious mediation and subsequent negotiations is a very successful result for Plaintiff. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the class. Some class members will receive substantial payments for their alleged unreimbursed vehicle expense. And while some class members will receive less than others – based on relatively fewer miles driven within the applicable recovery period – no class member will receive less than $50.00.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiff's Counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the named Plaintiff signed a contingency fee agreement with Plaintiff's Counsel agreeing to fees equaling 35% of the common fund, not including litigation costs. However, Plaintiff's Counsel cut their percentage to one-third (1/3), including litigation costs, in an effort to resolve this case and increase the amount paid to Plaintiffs.

### *Johnson* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.

Plaintiffs' counsel's firms combined spent nearly 80 hours litigating this case with no assurance of any recovery at all. Potashnick, ¶ 17; Karsh Decl., ¶ 14; Ghosh Decl., ¶ 9. This includes time spent investigating the facts, preparing and filing pleadings, reviewing documents produced by the named Plaintiff and by Defendant, analyzing Defendant's delivery, mileage and reimbursement data, communicating with the named Plaintiff, creating computerized damages models, researching and drafting a mediation statement, participating in the mediation, negotiating

the terms of the settlement, drafting the Settlement Agreement, drafting approval papers, and seeking Court approval of the settlement. Potashnick Decl., ¶ 18; Karsh Decl., ¶ 14.

Plaintiff's lead-counsel's lodestar is based on their approved hourly billing rates of $500.00 per hour for Mr. Potashnick and $450.00 per hour for Mr. Karsh. Potashnick Decl., ¶ 15; Karsh Decl., ¶ 15. Mr. Potashnick has been in private practice for 27 years and Mr. Karsh has been in private practice for 26 years. Potashnick Decl., ¶ 2; Karsh Decl, ¶ 8. Mr. Potashnick and Mr. Karsh have been approved at similar fee rates by district courts around the nation. *See, e.g., Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (ECF Doc. # 139) (Ex. 5), at 17-18 (order approving settlement, including all fees sought)) & (ECF Doc. # 138) (Ex. 6), at 5, 12 & 13 (seeking fees for Mark Potashnick at rate of $500.00 per hour); *Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF No. 35) (Ex. 7) (awarding $500.00 per hour for Mark Potashnick); *Heuberger v. Smith,* 2019 U.S. Dist. LEXIS 118174, *13-14 (N.D. Ind. Jan. 4, 2019) (approving $450.00 per hour for Mark Potashnick and Eli Karsh); *Hoffman v. Poulsen Pizza, LLC,* 2017 U.S. Dist. LEXIS 459, *21-22 (D. Kan. Jan. 3, 2017) (approving $450.00 per hour for Mark Potashnick); *Hackett,* 259 F.Supp.3d at 367-69 & n.2 (same); *Bodon v. Domino's Pizza, LLC,* 2015 U.S. Dist. LEXIS 82039, *27-28 (E.D.N.Y. Jun. 4, 2015) (same).

A "lodestar cross-check" reflects a multiplier of 1.22 based on counsel's time spent through April 8, 2020 (($46,666.67 total fee cost recovery / $38,395.00 lodestar = 1.22). Potashnick Decl., ¶ 17; Karsh Decl., ¶ 14; Ghosh Decl., ¶ 9. Of course, that multiplier will decline as counsel spends additional time pursuing settlement approval, assisting in settlement distribution, and responding to numerous inquiries from class members. Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Seaman v. Duke*

*Univ.,* 2019 U.S. Dist. LEXIS 163811, *17 (M.D.N.C. Sept. 25, 2019) ("Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate reasonableness of a requested percentage fee.") (quoting *Phillips v. Triad Guar. Inc.,* 2016 U.S. Dist. LEXIS 60950, *25 (M.D.N.C. May 9, 2016)); *Fangman v. Genuine Title, LLC,* 2017 U.S. Dist. LEXIS 126772, *17 (D. Md. Aug. 10, 2017) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiff's counsel will be required to expend significant additional time connected with administering the settlement, including communicating with numerous individual Plaintiffs.

### *Johnson* Factor (12): Awards in Similar Cases.

Plaintiff's counsel's fees equal to one-third (1/3) of the total recovery have been approved within this Circuit in the same claims against other pizza delivery companies. *Hackett,* 259 F.Supp.3d at 367-69; *Prince v. Perfect Delivery, Inc.*, Case No. 8:17-c-01950-AMQ (D.S.C. Jul. 23, 2018) (ECF No. 62), at 10-11.

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiff's counsel in obtaining relief for all Defendant's delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

## IV. Plaintiff Kirby Deserves a Service Award

The Settlement Agreement provides for a reasonable service award of $3,000.00 to the named Plaintiff. Ex. 1, ¶ 3.3(A). Service awards, also known as "incentive awards" or "class representative awards," "'are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Brown,* 318 F.R.D. at 578 (quoting *Manuel v. Wells Fargo Bank,* 2016 U.S. Dist. LEXIS 33708, *17 (E.D. Va. Mar. 15, 2016)); *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for same reasons as in Rule 23 class actions); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits").

Here, Mr. Kirby substantially assisted counsel in achieving this settlement on behalf of all of Defendant's delivery drivers who have been employed during the recovery period. He first sought and obtained counsel with specific experience in minimum wage/vehicle reimbursement claims and initiated this action. He provided ongoing guidance to counsel. He endeavored to protect the interests of all of Defendant's delivery drivers and to obtain a substantial recovery on their behalf. He participated throughout each round of the day-long mediation, and vigorously negotiated on behalf of all of Defendant's delivery drivers. Potashnick Decl., ¶ 13. The other delivery drivers have substantially benefitted from Mr. Kirby's efforts. In light of these efforts, a modest service

award is justified. *See, e.g., Burke v. Shapiro, Brown & Alt, LLP,* 2016 U.S. Dist. LEXIS 65120, *17 (E.D. Va. May 17, 2016) (observing that "several district courts have adopted the test used by the Seventh Circuit that instructs courts to examine 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'") (citing *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Kirven v. Central States Health & Life Co. of Omaha,* 2015 U.S. Dist. LEXIS 36393, *35 (D.S.C. 2015) (applying the "Cook factors" to find reasonable an incentive award of $7,563.27).

The award also falls well within the range of other service awards typically approved by courts in this Circuit. *See, e.g., Smith v. Toyota Motor Credit Corp.,* 2014 U.S. Dist. LEXIS 141402, *4-5 (D. Md. Oct. 2, 2014) (quoting *Cook* in finding reasonable an incentive award of $5,000.00 for each named plaintiff); *Decohen v. Abbasi,* 299 F.R.D. 469, 483 (D. Md. 2014) (quoting Cook to approve a $10,000.00 incentive award to the named plaintiff); *Boyd v. Coventry Health Care, Inc.,* 299 F.R.D. 451, 468-69 (D. Md. 2014) (awarding $5,000.00 service awards to each of five named plaintiffs); *Graham v. Hall's Southern Kitchens, LLC,* 2019 U.S. Dist. LEXIS 121615, *7-8 (D.S.C. Jul. 22, 2019) (approving $5,000.00 service award); *Nicholes v. Combined Ins. Co.,* 2019 U.S. Dist. LEXIS 108696, *11 (S.D. W.Va. Feb. 22, 2019) (same).

Importantly, Mr. Kirby will provide a general release as additional consideration for a service award, which is another reason to approve that award. *Singleton,* 976 F.Supp.2d at 673.

Defendant does not oppose the service award.

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

(a) certifies a class action for purposes of settlement;

(b) approves the parties' settlement of the North Carolina class claims as a fair, reasonable, and adequate;

(c) approves the parties' settlement of the FLSA claims as a reasonable resolution of a *bona fide* dispute;

(d) orders the parties to effectuate the settlement terms; and

(e) dismisses the claims with prejudice.

Respectfully submitted,

**PATTERSON HARKAVY LLP**
Narendra K. Ghosh (NC Bar No. 37649)
100 Europa Dr., Suite 420
Chapel Hill, NC 27517
Telephone: (919) 942-5200
Facsimile: (866) 397-8671
nghosh@pathlaw.com

**WEINHAUS & POTASHNICK**
*/s/ Mark Potashnick*
Mark A. Potashnick (Mo. Bar # 41315)
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**LIBERMAN, GOLDSTEIN & KARSH**
Eli Karsh (Mo. Bar # 43061)
(admitted *pro hac vice*)
225 South Meramec Ave., Suite 1200
Clayton, Missouri 63105
Telephone: (314) 433-9300
elikarsh@aol.com

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the foregoing was served on all attorneys of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

/s/ Mark Potashnick